```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
WEIDONG LI,

                        Plaintiff,

     -against-


THE CHINESE NAIL SALON ASSOCIATION OF
EAST AMERICA INC., JIAN YU a/k/a PETER
YU, YINDI WEN a/k/a YIN DI WEN a/k/a
WENDY WEN, JOHN DOE, and NICOLE DOE,

                        Defendants.
--------------------------------------X
```

**MEMORANDUM AND ORDER**
20-cv-6390 (KAM)(LB)

**MATSUMOTO, United States District Judge:**

Plaintiff Weidong Li ("Li" or "Plaintiff") commenced this action on December 31, 2020 against Defendants Jian Yu a/k/a Peter Yu ("Defendant Yu"), Yindi Wen a/k/a Yin Di Wen a/k/a Wendy Wen ("Defendant Wen"), John Doe, Nicole Doe (collectively, the "Individual Defendants"), and the Chinese Nail Salon Association of East America (the "Association"), which Plaintiff describes as a domestic, not-for-profit trade association comprised of Chinese nail salon owners and workers throughout the eastern region of the United States. *See* (ECF No. 1, original Complaint, "Compl." ¶¶ 9-10.) Plaintiff alleges that Defendants directed members of the Association, specifically nail salon owners, to refrain from employing Li because he had sued a number of nail salons in connection with alleged

1

violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §
201 (the "FLSA").  *See generally* (Compl.)  Plaintiff further
alleges that Defendants' actions constitute retaliatory conduct
in violation of the anti-retaliation provisions of the FLSA, 29
U.S.C. § 215(a)(3), and corresponding New York law, N.Y.L.L. §
215(1)(a)(iii).  (*Id.*)

Before the Court is Defendant Yu's and the Defendant
Association's (the "Moving Defendants") joint motion to dismiss
Plaintiff's December 9, 2021 Second Amended Complaint (ECF No.
24, "SAC"), pursuant to Federal Rule of Civil Procedure
12(b)(6), on the grounds that Plaintiff failed to state a claim
upon which relief can be granted.  *See generally* (ECF Nos. 49-3,
Motion to Dismiss, "Def. Mot."; 51, "Def. Reply").  Plaintiff
opposes the Moving Defendants' joint motion to dismiss his
claims.  (ECF No. 50, "Ptf. Opp.")  For the reasons set forth
below, the Moving Defendants' joint motion to dismiss is **GRANTED**
and the Second Amended Complaint is **DISMISSED** in its entirety
with prejudice, as against all Defendants.

<u>BACKGROUND</u>

**I.   Factual Background**

Between 2017 and 2020, Plaintiff filed four separate
lawsuits in New York federal courts alleging that four different
New York nail salons had engaged in unfair and abusive labor
practices in violation of the FLSA and New York labor law.  (SAC

2

¶¶ 20-25.)[1]  According to Plaintiff, each of the first three civil actions resulted in a settlement and was not resolved on the merits.  (SAC ¶ 21.)  However, *Li v. Spa Nail 9, Inc.*, No 19-cv-873 (TJM)(CFH), which was filed in the U.S. District Court for the Northern District of New York on June 30, 2019, is ongoing.  (SAC ¶¶ 21, 25.)

Plaintiff alleges that on or about July 11, 2020, Li learned from his friend that a WeChat user with the user ID "Elena5250" and the username "Lanxin" shared a picture of Li accompanied by a caption warning that Li "professionally sues nail salon owners" (the "July 11, 2020 Post"), with a WeChat group entitled "Nail Salon Boss 4 Group, New York Intel Station" (the "Nail Salon Owners' WeChat Group").  (SAC ¶¶ 27, 29-30.) Plaintiff further alleges that on July 22, 2020, he learned from his friend that the July 11, 2020 Post had been reposted by the Defendant Association's official WeChat account (the "July 22, 2020 Repost") in a separate WeChat group entitled "Hiring and Seeking Work, Eastern America" (the "Job Posting WeChat Group"). (SAC ¶ 35.)  Plaintiff has named the unidentified WeChat user who is purportedly responsible for the July 22, 2020 Repost as a

---

[1] See *Li v. Tina Nail Spa Salon Inc.*, No. 17-cv-4277 (KHP) (S.D.N.Y. June 7, 2017); *Li v. Hui Yang Nails & Beauty Spa Inc.*, No. 18-cv-6430 (GVWG) (S.D.N.Y. July 17, 2018); *Li v. Wiwi 1 Nail & Spa Inc*, No. 19-cv-6120 (JGK) (S.D.N.Y. July 1, 2019), transferred to No. 19-cv-1488 (FJS) (N.D.N.Y. Mar. 17, 2020); and *Li v. Spa Nail 9, Inc.*, No. 19-cv-873 (TJM) (N.D.N.Y. June 30, 2019).

Defendant using the placeholder "John Doe" and alleges that John Doe authored the July 22, 2020 Repost "using the Association's WeChat account[.]"  (SAC ¶ 14.)  However, Plaintiff does not allege that either John Doe or any other defendant is responsible for the original July 11, 2020 Post.  *See* (Ptf. Opp. at 5) ("defendants did not directly post the retaliatory information").

The Nail Salon Owners' WeChat Group with which the July 11, 2020 Post was shared is comprised of nail salon owners, at least some of whom are alleged to be members of the Defendant Association.  (SAC ¶ 27.)  Although Plaintiff does not allege that the Nail Salon Owners' WeChat Group is owned, operated, or otherwise controlled by the Defendants, Plaintiff alleges that the Nail Salon Owners' WeChat Group is used by members of the Defendant Association to share information, including by posting to the Defendant Association's WeChat Moments[2] page.  (SAC ¶ 27.) Neither does Plaintiff allege that the Job Posting WeChat Group, to which the July 22, 2020 Repost was shared, is owned, operated, or otherwise controlled by the Defendants. Plaintiff also does not allege that the Defendant Association owns, operates, or otherwise controls the WeChat Moments page, although he alleges the WeChat Moments page "allows the

---

[2] WeChat Moments is a feature of WeChat that serves a social-networking function by aggregating content for a closed group of connected WeChat users and permitting members of a WeChat group to share content.  (SAC ¶ 28.)

Association to signal-boost content to its followers and members." (SAC ¶ 28.) According to the Second Amended Complaint, members of the Job Posting WeChat Group typically use the WeChat Moments page to advise of job openings and to both solicit and discuss nail technician candidates. (SAC ¶¶ 35-39.)

Plaintiff does not explain how Defendant John Doe is associated with the Defendant Association, though Plaintiff speculates as to multiple possibilities in the Second Amended Complaint. Plaintiff alleges that Defendant John Doe used the Defendant Association's WeChat account to share the July 22, 2020 Repost. (SAC ¶ 14). Plaintiff also alleges that John Doe is Defendant Yu or, in the alternative, that John Doe is Defendant Wen. (SAC ¶¶ 12-14.) In yet another alternative assertion, Plaintiff alleges that if John Doe is neither Defendant Yu nor Defendant Wen, then John Doe was authorized to share the July 22, 2020 Repost using the Defendant Association's WeChat account by either or both Defendant Yu and Defendant Wen. (SAC ¶¶ 12-14.)

Plaintiff alleges that Nicole Doe "assisted in the blackballing of Plaintiff" by telling nail salon owners "not to engage with Plaintiff," but does not elaborate on how or when Nicole Doe purportedly engaged in the alleged "blackballing" or how Nicole Doe is related to or affiliated with the Defendant Association's nail salon owner members. (SAC ¶ 15.)

Plaintiff alleges that a number of WeChat Group members responded to the July 11, 2020 Post and the July 22, 2020 Repost, including by reposting the July 11, 2020 Post.  (SAC ¶¶ 37-38.)  Subsequent engagement with the content of the July 11,2020 Post also includes one user who responded that "[t]en out of ten people in the bosses' group gave [Li] negative reviews" (SAC ¶ 39), another user who stated that Li "is very unreasonable [and] wanted to sue our boss too" (SAC ¶ 40), and another user who stated that Li "is a pretty bad person."  (SAC ¶ 41.)  Other users appeared to push back on the negative commentary cautioning that members of the WeChat groups should "not spread rumors" and should not "believe in rumors" unless they "have evidence" of the alleged conduct.  (SAC ¶ 43.)

Plaintiff alleges that at the time of the July 11, 2020 Post, the July 22, 2020 Repost, and the subsequent discussion regarding his conduct and work history, he was working at a nail salon affiliated with the Defendant Association and located in Syracuse, New York (the "Syracuse Salon").  (SAC ¶ 26.)  In this role, Plaintiff alleges that he earned approximately $1,200.00 per week, including salary and tips.  (SAC ¶ 26.)

Plaintiff alleges that following the discussions stemming from the July 11, 2020 Post, on or about July 24, 2020, he was terminated from his role at the Syracuse Salon "because of the Association's blacklisting him."  (SAC ¶ 47.)  Following the

discontinuance of his employment in Syracuse, Plaintiff moved to Maryland where he worked at a nail salon that is not a member of the Defendant Association (the "Maryland Salon"), and earned approximately $706.54 per week, including salary and tips.  (SAC ¶¶ 48-49.)  Plaintiff alleges that he was "paid less [in Maryland] . . . than he was in Syracuse, because of the Association's blacklisting him" and that he was eventually terminated from his role at the Maryland Salon on or about December 12, 2020.  (SAC ¶¶ 49-50.)  Although Plaintiff attributes his termination to the logistical and economic challenges facing the Maryland Salon in light of the COVID-19 pandemic, Plaintiff alleges that his inability to find work at a nail salon thereafter can be attributed to the Defendant Association's "willful retaliation against him," which Plaintiff notes also caused him to "lose self-esteem" and to experience both insomnia and general "mental anguish."  (SAC ¶¶ 50-52.)

## II.  Procedural Background

Plaintiff served the Defendant Association with the original Complaint and Summons on January 14, 2021.  (ECF No. 9.)  Plaintiff filed an Amended Complaint 32 days later, on February 15, 2021.  (ECF No. 10.)  In his Amended Complaint, Plaintiff added Defendant Yu and Defendant Wen as individual Defendants.

On June 10, 2021 Plaintiff sought leave of the Court to file a Second Amended Complaint in order to add claims for emotional distress and punitive damages pursuant to 29 U.S.C. § 216(b).  (ECF Nos. 15-17.)  Plaintiff also sought to add the alternative names of Defendant Yu and Defendant Wen, and to add Nicole Doe and John Doe as individual Defendants.  (ECF No. 17.) Plaintiff's motion for leave to file the Second Amended Complaint was granted by Magistrate Judge Lois Bloom and Plaintiff proceeded to file the Second Amended Complaint on December 9, 2021.

**LEGAL STANDARD**

I.  **Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The Court reviews the operative Second Amended Complaint, accepting the factual allegations in the Amended Complaint as true, for the purposes of [] Defendants' 12(b)(6) motion, and drawing all reasonable inferences in Plaintiff's favor. *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021).  To the extent Plaintiff draws "legal conclusion[s] couched as factual allegation[s]," however, the Court is not bound to accept such

statements as truth.  *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court must dismiss Plaintiff's Second Amended Complaint if he has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II.  Retaliation under the FLSA and NYLL

Title 29 U.S.C. § 215(a)(3) prohibits any person from "discharg[ing] or in any other manner discriminat[ing] against an[] employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA.  Similarly, N.Y.L.L. § 215(a) states that "[n]o employer . . . shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee" that has engaged in activity protected by the NYLL.  "NYLL § 215 and FLSA § 215(a)(3) are nearly identical provisions." *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 27 (E.D.N.Y. 2020) (citing *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 471 n.18 (S.D.N.Y. 2009)) (internal quotation marks omitted).  Indeed, "district courts in this Circuit have

9

consistently interpreted the . . . New York Labor Law coextensively with the" FLSA. *Inclan v. New York Hospitality Group, Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (internal citation omitted). Accordingly, the Court's analysis of the anti-retaliation provision of the FLSA is equally applicable to Plaintiff's anti-retaliation claims under N.Y.L.L. § 215. *See Hong v. Quest Int'l Limousine, Inc.*, No. 21-cv-7908 (SN), 2022 WL 2829907, at *4 (S.D.N.Y. July 20, 2022) ("the Court's construction of the FLSA anti-retaliation provisions is [] also dispositive of [plaintiff's] claims under" the NYLL anti-retaliation provision) (collecting cases).

### A. Employer Status

Under both the FLSA and NYLL, a plaintiff may only seek "legal and equitable relief for retaliation" where defendants are adequately alleged to be plaintiff's employer. *Hong*, 2022 WL 2829907, at *3. Although liability for retaliatory conduct proscribed by the FLSA and NYLL is exclusively reserved for actual employers, the Second Circuit treats the concept of "employment for FLSA [and NYLL] purposes as [] flexible" and courts consider the employer-employee relationship "on a case-by-case basis by review of the totality of the circumstances." *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008) (internal citation omitted). Because the FLSA [and NYLL] are written "in the broadest possible terms" and

10

are remedial in nature, "a full inquiry into the true economic reality [of an employer-employee relationship] is necessary" to evaluate the scope of employer liability.  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12-14 (2d Cir. 1984).  This inquiry, which is referred to as the "economic reality" test, requires courts to determine "'whether (1) the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"  *Carter*, 735 F.2d 8, 12 (2d Cir. 1984).

Once an entity is found to be an employer within the meaning of the FLSA, a Court must also consider whether individual defendants associated with the employer-entity are individually liable for retaliatory conduct as well.  That inquiry was set forth by the Second Circuit in *Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013).  Individual liability is also grounded in the "economic reality" of the employer-employee relationship, but also takes into account an individual's "operational control" or the degree to which an individual possesses "control over a company's actual operations in a manner that relates to a plaintiff's employment."  *Alvarado v. GC Dealer Services Inc.*, 511 F. Supp. 3d 321, 354 (E.D.N.Y.

2021) (quoting *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018)) (internal quotation marks omitted).

Irrespective of how "expansive the nature of the FLSA's definitional scope" may be, the purpose of the "economic reality" test is to determine whether an "employer-employee relationship exists," not to determine whether an individual or entity outside the scope of the employer-employee relationship may nevertheless be held liable for retaliation. *Barfield*, 537 F.3d at 141; *see also Frankel v. Bally, Inc.*, 987 F. 2d 86, 89 (2d Cir. 1993) ("courts construing [the FLSA and NYLL] have adopted the 'economic realities' test" to determine "if 'as a matter of economic reality, [employees] are dependent upon the businesses to which they render service[]'" such that those "individuals are considered employees") (internal citation omitted).

### B. *McDonnell-Douglas* Burden-Shifting Framework

District courts within this Circuit evaluate FLSA and NYLL retaliation claims under the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Robinson v. De Niro*, No. 19-cv-9156 (LJL), 2023 WL 4862772, at *21 (S.D.N.Y. May 25, 2023). A plaintiff can "establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant[;] . . . (2) an employment action disadvantaging the plaintiff; and

(3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).  It is well established in this Circuit that filing an FLSA lawsuit constitutes protected activity.  *See Mullins*, 626 F.3d at 53 (listing "the filing of a FLSA lawsuit" as an example of protected activity); *see also Stih v. Rockaway Farmers Market, Inc.*, No. 22-cv-3228 (ARR), 2023 WL 2760492, at *5 (E.D.N.Y. Apr. 3, 2023) ("the filing of [an FLSA] lawsuit clearly constitutes a protected activity"). Under the FLSA and NYLL, an employment action disadvantages a plaintiff, "if it well might have dissuaded a reasonable worker from making or supporting similar charges." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006).  Finally, at the prima facie stage, plaintiff can establish a causal connection by pointing to "evidence of retaliatory animus" or by showing that there was "a close temporal proximity between the protected activity and the adverse employment action." *Torres*, 628 F. Supp 2d at 473.

Once the plaintiff establishes a *prima facie* case of FLSA retaliation, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the employment action." *Velazquez v. Yoh Services, LLC*, 803 F. App'x 515, 517 (2d Cir. 2020) (internal citation omitted).  If the defendant is able to demonstrate the requisite non-retaliatory reason for its

13

employment action, the burden shifts back to the plaintiff.  At this stage, the plaintiff must "produce sufficient evidence to permit a reasonable juror to find that defendant's proffered explanation was pretextual, and that more likely than not, retaliation was the real reason for the employment action." *Soto v. Miss Laser Inc.*, No. 19-cv-4745 (MKB), 2021 WL 7287304, at *3 (E.D.N.Y. Mar. 16, 2021).

Generally speaking, retaliation claims made in connection with "post-employment conduct are [] allowed under 'relatively narrow' circumstances." *Porter v. MooreGroup Corporation*, No. 17-cv-7405 (KAM), 2020 WL 32434, at *11 (E.D.N.Y. Jan. 2, 2020) (quoting *Santos v. E T & K Foods, Inc.*, No. 16-cv-7107 (DLI)(VMS), 2017 WL 9256490, at *3 (E.D.N.Y. June 27, 2017)). One such circumstance involves "blacklist[ing]" that may be "injurious to [a plaintiff's] *current* employment or the ability [of the plaintiff] to secure *future* employment." *Sherman v. Fivesky, LLC*, No. 19-cv-8015 (LJL), 2020 WL 5105164, at *5 (S.D.N.Y. Aug. 31, 2020) (citing *Wanamaker v. Columbian Rope Co.*, 108 F. 3d 462, 466 (2d Cir. 1997) (emphasis in original).

<u>**DISCUSSION**</u>

**I.   Defendants' Status under the FLSA and NYLL**

The Moving Defendants argue that the Second Amended Complaint should be dismissed in its entirety because Defendants are not subject to the FLSA or NYLL.  Specifically, the Moving

14

Defendants contend that neither the Defendant Association nor the Individual Defendants can be considered Plaintiff's employers within the meaning of the FLSA or NYLL.  Additionally, the Moving Defendants contend that because the Defendant Association is accurately described in the Second Amended Complaint as a non-profit organization and does not fall into a relevant exception category, Defendants are not subject to the FLSA and NYLL because they are not enterprises engaged in ordinary commerce.

On the first point regarding the Defendant Association and Individual Defendants not being "employers," the Court agrees. Plaintiff has failed to demonstrate that Defendants are employers within the meaning of the FLSA and NYLL.  On the second point, the Moving Defendants misapply the enterprise requirement from the wages-and-hours provisions of the FLSA to the anti-retaliation provision of the FLSA.  Defendants need not be "enterprise[s]" within the meaning of 29 U.S.C. §§ 203(r) and 203(s) in order to be held liable for retaliatory conduct. However, because Defendants are not employers within the meaning of the FLSA, the Moving Defendants' arguments regarding the Defendant Association's not-for-profit status is moot.

### A. Employer Relationship

The Second Amended Complaint does not include any allegation that Plaintiff was ever employed by any of the named

Defendants.  To the contrary, Plaintiff acknowledges that
"defendants were not directly involved with plaintiff['s]
employment" (Ptf. Opp. at 9), and that plaintiff "was not
directly an employee [of] defendants[.]"  (Ptf. Opp. at 5.)
This alone is fatal to Plaintiff's retaliation claims.

Even when "applying the economic reality test," which
requires this Court to consider "whether the alleged employer
could hire and fire [Plaintiff], control work schedules and
conditions of employment, determine the rate and method of
payment, and maintain employment records[,]" *Carter*, 735 F.2d at
14, Plaintiff has failed to allege sufficient facts to support a
finding that the Defendant Association could be considered his
employer.  Plaintiff does not allege that the Defendant
Association controlled his work schedule or the conditions of
his employment.  Plaintiff also makes no mention of the
Defendant Association's maintenance of his employment records.
Finally, although Plaintiff alleges that the "[Defendant]
Association's blacklisting," by virtue of the July 22, 2020
Repost,[3] contributed to his difficulties securing and maintaining
gainful employment, Plaintiff fails to allege that the Defendant

---

[3] The Court notes that Plaintiff has made conflicting assertions regarding
Defendants' role in the alleged retaliatory action.  On the one hand,
Plaintiff has alleged that Defendants are "directly responsible for
plaintiff['s] inability to find work due to the post that they made of
plaintiff."  (Ptf. Opp. at 5.)  On the other hand, Plaintiff has alleged that
"defendants did not directly post the retaliatory information," but that
defendants "are indirectly associated with it and therefore are jointly and
severally liable in the matter."  (Ptf. Opp. at 5.)

16

Association determined the rate or method of his pay or that Defendants had the power to hire or fire him.

Plaintiff's allegations regarding the Individual Defendants are similarly unavailing.  Plaintiff asserts that, "upon information and belief," Defendants Yu and Wen "own[] and manage[] the Association's WeChat account[.]"  (SAC ¶¶ 12-13.) Plaintiff further asserts that Defendant Nicole Doe "assisted in the blackballing of Plaintiff" and that John Doe "is the person who posted" the July 22, 2020 Repost.  (SAC ¶¶ 14-15.)  These assertions do not amount to a well pleaded allegation that the Individual Defendants "exercise[d] operational control over" Plaintiff as an employee.  *Irizarry*, 722 F.3d at 110 ("A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment.") Nor has Plaintiff pointed to any facts that "indicate the manifestation of, or, at least, a clear delineation of [the Individual Defendants'] power over" Plaintiff's employment. *Irizarry*, 722 F.3d at 112.

Nevertheless, Plaintiff argues that Defendants should be held liable under the anti-retaliation provisions of the FLSA and NYLL under two interrelated theories.  Plaintiff first argues that because Defendants "play[ed] a large role in plaintiff getting fired and also plaintiff not being able to

find another job" (Ptf. Opp. at 9), Defendants should be held liable for retaliatory conduct even if they are not and never were Plaintiff's employers.  According to Plaintiff, because Defendants engaged in retaliatory conduct by allegedly facilitating, promoting, or actively participating in either or both the July 11, 2020 Post and July 22, 2020 Repost, and because the result of the alleged conduct was one or more adverse employment actions, Defendants should be found liable for violations of 29 U.S.C. § 215(a)(3) and N.Y.L.L. § 215(i)(a)(iii).  (Ptf. Opp. at 5.)  This of course amounts to a request that the Court place the cart before the horse. Plaintiff must first establish that Defendants were his employers within the meaning of the FLSA and NYLL before Plaintiff can establish that Defendants engaged in retaliatory conduct that resulted in an adverse employment action – not the other way around.

Plaintiff also argues that because at least one of his former and prospective employers "[was] [an] affiliate[] of defendants" (Ptf. Opp. at 14), and because "Defendants were self-consciously acting in the interests of the Association's employer members," Defendants "were employers within the meaning of the FLSA . . . as defined by Section 203(d)[.]"  (SAC ¶ 56.) Plaintiff's argument does not hinge on a finding that Defendants were Plaintiff's actual employers, but rather that Defendants

were acting in the interest of Plaintiff's former and prospective employers such that Defendants should be held "jointly and severally liable in the matter."  (Ptf. Opp. at 5.)[4] This notion, that a non-employer defendant may be held civilly liable for violations of 29 U.S.C. § 215(a)(3) and N.Y.L.L. § 215(1)(a)(iii) by virtue of their retaliatory conduct and affiliation with an actual employer, was raised in *Arias v. Raimondo*, 860 F.3d 1185 (9th Cir. 2017) and has been repeatedly rejected by courts within this Circuit.  *See Kim v. Lee*, 576 F. Supp. 3d 14, 27 (S.D.N.Y. 2021); *Hong*, 2022 WL 2829907, at *3 (S.D.N.Y. July 20, 2022); *Lima v. Napoli*, No. 19-cv-1699 (JMA), 2023 WL 2731689, at *1 (E.D.N.Y. Mar. 31, 2023) ("the Court's determination that Defendants were not Plaintiff's 'employers' . . . precludes Plaintiff from pursuing a retaliation claim").

As in *Arias*, Plaintiff argues that even though Defendants "were not [his] employers," Defendants' "actions towards plaintiff were retaliatory in nature and cost plaintiff his job and his ability to work[.]" (Ptf. Opp. at 9.)  *See Kim*, 576 F. Supp. 3d at 27 (describing the plaintiff's argument in *Arias*, which was ultimately rejected by the court in *Kim*, that "[j]ust

---

[4] Plaintiff's allegations that Defendants acted in the "interest" of his former and prospective employers does not appear to be limited to members of the Defendant Association.  Plaintiff does not specify any prospective employers that are members of the Defendant Association and from whom he sought employment; instead, Plaintiff alleges that the Maryland Nail Salon was not a member of the Defendant Association.  (SAC ¶ 48.)

because [Defendants] were not [Plaintiff's] employers, "d[oes] not mean that [Defendants] could not have retaliated against" Plaintiff).  Plaintiff also argues that, as in *Arias*, "Defendants were employers within the meaning of the FLSA, because 'employer' as defined by Section 203(d) of the FLSA includes 'any person acting directly or indirectly in the interest of an employer in relation to an employee' and Defendants were self-consciously acting in the interests of the Association's employer members . . ."  (SAC ¶ 56); *see Kim*, 576 F. Supp. 3d at 26 (describing plaintiff's argument, which the court ultimately rejected, that although "Defendants 'are not [his] employer,' as that term has been understood in the wage-and-hour context . . . Defendants are subject to Section 215(a)(3) because they fit within the definition of 'any person'" outlined in 29 U.S.C. § 203(d).)

The Supreme Court recognizes "the expansiveness of the [FLSA's] definition of employer" and has interpreted the term, "employer," as defined by 29 U.S.C. § 203(d), to include individuals or entities that maintain extensive "managerial responsibilities . . . which [provide for] substantial control of the terms and conditions of [] work" in relation to a plaintiff filing suit pursuant to the FLSA.  *Falk v. Brennan*, 414 U.S. 190, 195 (1973).  The Second Circuit synthesized this definition in the formulation of the "economic reality" test.

*Carter*, 735 F.2d at 12.  However, neither the Supreme Court, nor the Second Circuit has interpreted the definition of "employer" under 29 U.S.C. § 203(d) so broadly as to encompass a non-employer defendant with no economic ties, responsibilities, control, or power in relation to a plaintiff filing a civil lawsuit pursuant to 29 U.S.C. § 215(a)(3) or N.Y.L.L. § 215(1)(a)(iii).  Although, the relevant definitions prescribed in 29 U.S.C. § 203(d) are "exceedingly broad," the statute "does have its limits."  *Tony and Susan Alamo Foundation v. Sec. of Labor*, 471 U.S. 290, 295 (1985).  The outer limitations of the definition of "employer" and the scope of the employer-employee relationship are marked by the "economic reality" test set forth in *Carter*.  As previously noted, Plaintiff has failed to allege sufficient facts to support a finding that "an employment relationship exists for purposes of the FLSA," in light of the "economic reality" of the alleged relationship.  *Carter*, 735 F.2d at 12.

Moreover, the penalties outlined within the statutory text of the FLSA explicitly limit civil liability for a violation of the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3), and for a violation of the wage-and-hour provisions of the FLSA, 29 U.S.C. §§ 206-07, to "an[] employer," 29 U.S.C. § 216(b), whereas criminal liability for a violation of 29 U.S.C. § 215 is extended to "any person."  29 U.S.C. § 216(a).

The Court is persuaded by the Sixth Circuit's reasoning in *Diaz v. Longcore*, 751 F. App'x 755, 759 (6th Cir. 2018), which has been adopted by other district courts within the Second Circuit, that "Congress clearly knows how to create broader liability when it wishes to" and with respect to the private right of action for violations of the anti-retaliation provision of the FLSA, "it did not" extend liability to "any person" – only to employers. *See Kim*, 576 F. Supp. 3d at 26 ("The Court is persuaded by *Diaz*, which is consistent with the limited relevant caselaw in this Circuit")(collecting cases). Just as other courts within this Circuit have declined to follow Plaintiff's expansive theory of liability under the anti-retaliation provisions of the FLSA and NYLL, so too does this Court. *See Kim*, 573 F. Supp. 3d at 27-30 ("declin[ing] to follow *Arias*"); *Hong*, 2022 WL 2829907, at *3 (S.D.N.Y. July 20, 2022) ("The Court declines to follow Arias.")

Even crediting the most expansive interpretation of the relevant statutes, Defendants are not employers within the meaning of the FLSA or NYLL. Nor does Plaintiff allege that Defendants are his employers. Though Plaintiff concedes that Defendants are not his employers, Plaintiff argues that they should nevertheless be found to have violated 29 U.S.C. § 215 and N.Y.L.L. § 215, either because Defendants are affiliated with his employers or because Defendants allegedly engaged in

retaliatory conduct regardless of their employer status. Plaintiff's argument is foreclosed by the relevant statutes and undermined by decisions of other district courts within the Second Circuit.  Accordingly, Plaintiff has failed to allege adequate facts to support a finding that Defendants are subject to 29 U.S.C. § 215(a)(3) and has failed to articulate a cognizable FLSA retaliation claim on this basis.  As set forth previously, "the Court's construction of the term 'employer' under the FLSA and its application to retaliation claims under that statute is [also] dispositive of Plaintiff's claims under [N.Y.L.L. § 215(1)(a)(iii)]."  *Kim*, 576 F. Supp. 3d at 30 ("courts in this Circuit have consistently interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA . . . [and] Plaintiff does not argue [] that the term 'employer' should be given any different meaning under the NYLL") (internal quotation marks and citations omitted).

### B. Enterprise Status

As previously noted, the Second Amended Complaint alleges that the Defendant Association as a "domestic not-for-profit corporation" and "trade association" with an "excess of $500,000.00 [in] gross annual revenue" for the year 2020.  (SAC ¶¶ 8-11.)  The Moving Defendants argue that notwithstanding Plaintiff's assertion that the Defendant Association earned

"$500,000 in gross revenues" in any given year, which the Moving
Defendants deny as false, Plaintiff has failed to plead
sufficient facts to support a finding that any Defendant is "a
covered enterprise under the FLSA[.]"  (Def. Mot. at 20.)  The
Moving Defendants contend that this flaw in Plaintiff's factual
pleadings warrants dismissal for lack of subject matter
jurisdiction.[5]

The wage-and-hours provisions of the FLSA, 29 U.S.C. §§
206, 207, apply to an employee who (1) "is engaged in commerce
or in the production of goods for commerce," or (2) "is employed
in an enterprise engaged in commerce or in the production of
goods for commerce."  *Jacobs v. New York Foundling Hosp.*, 577
F.3d 93, 96 (2d Cir. 2009).  Pursuant to 29 U.S.C. §
203(s)(1)(A), enterprise liability extends to entities that
either have "employees engaged in commerce or in the production
of goods for commerce" or "whose annual gross volume of sales .
. . is not less than $500,000."  The anti-retaliation provision
of the FLSA, however, does not include the same requirement that
a covered entity be an "enterprise engaged in commerce" and
"[s]everal circuit courts have [] concluded that FLSA's

---

[5] Although the Moving Defendants argue that this Court lacks subject matter
jurisdiction over Plaintiff's claims in light of Plaintiff's failure to
allege that Defendants constitute one or more enterprises within the meaning
of the FLSA, "the prevailing view in this Circuit is that the question of
whether enterprise coverage applies goes to the merits of an FLSA cause of
action and is not jurisdictional."  *Gaughan v. Rubenstein*, 261 F. Supp. 3d
390, 422 (S.D.N.Y. 2017) (collecting cases).

prohibition on retaliation applies regardless of whether an employer qualifies as an enterprise engaged in commerce." *Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132, 1135 (10th Cir. 2018) (collecting cases).  The Second Circuit has not definitively ruled on this issue and district courts within the Second Circuit appear to be split.  *See Savor Health, LLC v. Day*, No. 19-cv-9798 (RA), 2022 WL 912236, at *8 n.13 (SD.N.Y. Mar. 29, 2022) (comparing cases).  This Court agrees with the court in *Savor Health* and the many circuit courts that have similarly held that, based on the plain text of the wage-and-hour provisions of the FLSA, as compared to the anti-retaliation provision of the FLSA, "the anti-retaliation provision does not share the wage and overtime [hours] provisions' commerce and revenue requirements."  *Id*.  The Defendant Association need not be an enterprise engaged in commerce and the Individual Defendant need not be affiliated with an enterprise engaged in commerce for Defendants to be held liable for alleged violations of 29 U.S.C. § 215(a)(3) and N.Y.L.L. § 215(1)(a)(iii).  In any case, because Plaintiff has failed to plead sufficient facts to establish that Defendants are employers within the meaning of the anti-retaliation provision of the FLSA, which the Court has determined is a requirement of that provision, the Moving Defendants' arguments regarding Plaintiff's purported failure to

establish any Defendant as an enterprise engaged in commerce is moot.

## II.   The *McDonnell-Douglas* Framework for Retaliation

Because Plaintiff has failed to allege facts to establish that the Defendant Association or the Individual Defendants are employers within the meaning of the anti-retaliation provisions of the FLSA or NYLL, the Court need not address Plaintiff's remaining contentions.  Specifically, the Court need not determine whether Plaintiff has made a prima facie showing that he "(1) participat[ed] in protected activity known to the defendant[s]," that he suffered from (2) an [adverse] employment action," or that there exists "(3) a causal connection between the protected activity and the adverse employment action." *Soto v. Miss Laser, Inc.*, 19-CV-4745 (MKB), 2021 WL 7287304, at *3-4 (E.D.N.Y. Mar. 16, 2021) (quoting *Velasquez v.  Yoh Servs., LLC*, 803 F. App'x 515, 517 (2d Cir. 2020)).  Nor is it necessary for the Court to engage in the second or third steps of the *McDonnell Douglas* burden-shifting framework because Plaintiff has failed to establish a prima facie case of retaliation at the first step.

## III. Emotional Distress Damages and Punitive Damages

Finally, Plaintiff's failure to plead facts supporting a conclusion that Defendants are employers within the meaning of the FLSA also forecloses any claim for emotional distress

26

damages and punitive damages under 29 U.S.C. § 216(b).  As set forth previously, the penalties outlined in 29 U.S.C. 216(b) apply only to "employer[s]" whereas criminal liability under 29 U.S.C. § 216(a) is extended to "any person."  Because Defendants are not Plaintiff's employers, none of the penalties outlined in 29 U.S.C. § 216(b) are available to Plaintiff, including the "unpaid minimum wages, or [] unpaid overtime compensation" associated with a violation of 29 U.S.C. §§ 206, 207; or the "legal and equitable relief," such as damages, associated with a violation of 29 U.S.C. § 215(a)(3).

## CONCLUSION

For the forgoing reasons, the Moving Defendants' motion to dismiss Plaintiff's retaliation claims under 29 U.S.C. § 215(a)(3) and N.Y.L.L. § 215(1)(a)(iii) is **GRANTED**.  The Second Amended Complaint is **DISMISSED** in its entirety with prejudice, as against all Defendants.

Federal Rule of Civil Procedure 15(a) dictates that leave to amend a complaint shall be freely given "when justice so requires."  Although the Second Circuit has advised that "the usual practice upon granting a motion to dismiss [is] to allow leave to replead," *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (internal citations omitted), Plaintiff has already been granted leave to amend his Complaint twice.  *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d

Cir. 2008) ("leave to amend, though liberally granted, may properly be denied for . . . failure to cure deficiencies by amendments previously allowed") (internal citations omitted). Moreover, because the Court has determined that Defendants are not employers as a matter of law, any further amendment of the Second Amended Complaint against Defendants would be futile. *See Kim*, 576 F. Supp. 3d at 35.

The Clerk of Court is respectfully requested enter judgment in favor of Defendants and to close this case.

**SO ORDERED.**

Dated: February 28, 2024
       Brooklyn, New York

KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York